Mary Smith seised in fee Mar. 2. 1702. makes a Deed poll in these Words “ For the natural Love & Affection that I bear to my Son Geo. Smith I do make this my Deed of Gift of the sd. 200 A. of Land (the Premes in Question) unto him the s’d Geo. Smith & his Heirs forever after my Decease But it is my true Intent & Meaning to have free Ingress & Egress into all & every Part of the s’d Premes during my natural Life And if it shall happen that the s’d Geo. Smith shall die without Heirs Then I give the s’d Land to my Son John & his Heirs forever ”
G. Smith died with’t Issue in the Life of the Grantor After whose Death she with her 2d Husband Fairfax conveied the Premes in Queon to the Deft. & is since dead The Lessor is Bro’r & Heir of Geo. Smith
The only Question in this Case is Whether any Estate passed to Geo. Smith by this Deed for if any Estate did pass I think it cannot be disputed but that it was a Fee simple And then the Lessor of the Pit. as his Heir has a good Title
The Objection I apprehend will be that the Estate being limited to him after the Death of his Mother is void For that a Freehold can not be limited in pr&senti to commence in futuro It must be agr’d that the Maxim of the Comon Law is A Freehold shall not commence in futuro But since the making of the Statute of Uses the Maxim has in a Manner lost all its Force & Effect for it is universally agreed that the Maxim will not hold upon any Conveiance by Way of Use but only in Conveiances at the Comon Law as we call them It will be therefore necessary to see whether this Deed is to operate as a Conveiance at Com Law or as a Conveiance to Use
*B321 The Distinction between these two kind of Conveiances is well known Conveiances at Com Law are such as were in Use & Practise before the Stat. of Uses 27. H. 8. Conveiances to Use are such as have been introduced since the making of that Statute The different Rules of Construction upon the one & the other of these Conveiances are as [sic\ well known Conv. at Com Law are construed strictly according to the strict & rigid Rules of the Com Law But Conv. to Use are allowed a more liberal Construction They participate in some sort of the Nature of Wills They are construed according to Equity & the just Intention of the Parties The reason of this Difference I shall have Occasion to shew presently 1 Inst. 49. a. 1 Vent. 138. 373. Nel. Sut. 242. Poll. 525. 8 Rep. 93. 3 Lev. 370.
But I will first beg Leave to examine a little the reason of the Maxim just now remember’d viz. That a Freehold shall not commence in futuro It is regularly a Rule of Law that the Freehold shall never be put in Abeiance that is so as not to be existing in some Person And both this Rule & the Maxim we are speaking of are [298] founded upon this reason that there may be always a Tenant to the Precipe I say regularly the Freehold shall not bi in Abeiance because in some Instances Ex necessitate rei it may be so As where an Incumbent dies till the Church is full again &c. Co. Litt. 342. 343.
For the clearer Understanding of this it may be necessary to explain what is meant by Tenant to the Precipe Anciently till within 200 Years or less Where a Man was disseised or had a Title to Lands he had no Remedy to recover the Possession but by a real Action (Ejectments are an Invention of later Times) Now the first Process in real Action is called a Precipe And the Law requires that the Deft, or Person ag’t whom such Precipe is brought sho’d have a Freehold in the Land whence he is called Tenant i.e. Tenant of the Freehold It is obvious then that if the Freehold could be put in Abeiance so as not to be existing in any Person A Man who had a Right to recover the Possession of any Lands could have no Remedy for want of a proper Person ag’t whom to bring his Precipe And this would be the Consequence of it in a Conv. at Com. Law a Freehold might be created in prczsenti to commence in futuro Because in all such Conveiances there is a Transmutation of Possession And no Estate left in the Grantor And therefore as the Freehold would be out of him by the Conveiance if it should be allowed to be *B322 good It must be in Ábeiance that is in nobody till the future Estate commenced
This I take it is the true Reason of the maxim that a Freehold shall not commence in futuro But we shall see presently that this Reason will not hold in Conveiances to Use And that therefore the Maxim cannot at all affect such Conveiances
It will however be necessary in the first Place to shew that the Deed before us ought to be construed as a Conveiance to Use And then I hope I shall have an easie Task to prove that Geo. Smith took a good Estate by way of future Use. These are the 2 Points I shall insist on
As to the 1. The Judges of late Days for more than a century past have laid aside the ancient stiff Adherence to the rigid Rules of the Com. Law in the Constr. of Deeds They have more Regard to the Substance that is the Estate intended to be passed than to the Shadow that is the manner of passing 3 Lev. 371. And therefore if a Deed cannot operate one Way so as to give it the Effect intended they will construe it to operate another Way And this sometimes ag’t the seeming Intention of the Parties as to the manner of Operation They consider the principal Intention that is the Passing of the estate And construe the Deed so as to fulfil that Intention And they will [299] never suffer a Deed to be defeated or to have no Effect if by any Means they can construe it so as to give it the Effect intended Lord Hobart who lived about 100 years ago commends those Judges who are curious & even subtil to invent Reasons & Means to make Deeds effectual according to the just Intention of the Parties Hob. 277. And Sir M. Hale quotes this Passage upon two Occasions as an excellent Rule for Judges to follow 1 Vent. 141. 378.
The Deed before us can operate only 3 ways Either as a Feoffment a Bargain & Sale or a Coven’t to stand seised the first is a Conv. at Comon Law the two latter are Conv. to Use Everybody knows that Livery of Seizin is necessary to a Feoffment And that in Conv. to Use there must be a good Cons, to raise the Use This Deed cannot operate as a Feoffment for want of Livery It cannot operate as a Bargain & Sale for Want of a proper Cons. viz. the Paiment of Mony which is the only good Cons, to raise an Use by Way of Barg. & Sale 1 Vent. 137. If therefore it does not operate as a Coven’t to stand seised it must be absolutely void & can have no Effect at all The Intention of *B323 the Grantor in making it must be entirely defeated And how consistent that will be with the constant Resolutions of ;, the Judges will best appear from the Cases themselves
The first I shall take Notice of is Tebb & Popplewell 2 Ro. Abr. 786. (40. Eliz) A Woman in Cons, of Marriage to be had between her & one F. by Deed inrolled gave granted & confirmed Land to A. & his Heirs with Clause of Warranty but no Livery was made The Deed being inrolled shew’d an Intent it sho’d operate as a Barg. & Sale The Words give & grant & confirm which are proper to Conv. at Com. Law shewed an Intent it sho’d operate as a Feoffment But because it could not operate as the latter for Want of Livery nor as the former for want of a good Cons. viz. Mony Therefore rather than the Deed should be void it was adj’d a good Use did arise to A. by Way of Coven’t to stand seised there being a Cons, proper to raise an Use in such a Conv. viz. Marr. N. B. It is not expressly sayed to operate as a Cov’t but it could no other Way. Poll. 534. takes it so
The next that I find in Order of Time is not till after the Restoration viz. 22. Car. 2. Crossing & Scudamore 1 Vent. 137. 2 Lev. 9. 1 Mod. 175. A Man in Cons, of natural Love gave granted barg. sold aliened enfeoffed & confirmed to his Dau’r & her Heirs There was a Cov’t for quiet Enjoym’t & a Warranty in the Deed And the same was Inrolled It was obj. as in the last Case that the Deed could not operate as a Barg. & Sale for Want of Cons, that the Words of the Deed & the Cov’t & Warr. were proper to Conv. at Com. Law And it was not the Intention the Est. sho’d pass by Way of Use But it was adj’d that the Words give & grant &c. would raise an Use And that since it could not operate as a Barg & Sale it sho’d as a Cov’t to stand se sed Notwithstanding the Inrollment rather than the Deed sho’d be defeated.
[300] 29. Car. 2.) Walker & Hall 2. Lev. 213. A Man in Cons, of Marr. gave granted & conf. to his intended Wife with a Lre of Atto. in the Deed & a Blank for the Attorneys Name A mem. was indorsed that Livery was made by but no Witnesses
to the Livery Here it was obj. that the Intent appeared plainly to make a Conv. at Com. Law viz. a Feoffment But because the Deed could not operate as such for Want of Livery It was adj. to enure as a Cov’t to stand seised that the Deed might have its Effect.
30. Car. 2.) Coliman & Senhouse 2 Lev. 225. 2 Show. 11. T. *B324 Jo. 105. Poll. 523. A. by Indre betw. him & his Mother covenanted & agreed that if he died without Issue of his Body That then he gave granted & confirmed to his Mother There were sev’l Cov’ts prior to this in the Deed from the Moth’r to the Son And the Cons, expressed was for the Advancem’t of the Son The Question was Whether this Deed sho’d operate as a Cov’t to stand seised And tho' it was obj. that it seemed rather an Agreem’t to compose Matters betw, Moth. & Son & that it rested only in Cov’t & there was no Cons, to raise an Use to the Mother Yet it was adj’d that a good Use was raised by Way of Cov’t to stand seised That being the Intent of the Parties And sayed that where the Intent app’rs to pass an Estate but the Conv. is defective it shall be supplied & made good by Way of Uie to fulfil that Intent And here the Intent was manifest that the Moth’r sho’d have the Esta, if the Son died with’t Issue
N. B. the Judgm’t in this Case is misprinted in Poll, being sayed to be for Pit. instead of Deft.- All the other Rep’ts are so And the Case is always cited as so adj’d 3 Lev. 372.
The Argum’t & Judgm't here are full to both Points of this particularly in Poll, quem lege
1 W. & M.) Harrison & Austin Comb. 128. Carth. 38. 2 Mod. 237. A. by Deed Poll reciting that he had no Issue & that it was his Intent if he died with’t Issue that his Lands sho’d remain in his Blood & Kindred In Cons, of natural Love gave granted & conf. to B. his Neice To the Use of himself for Life Rem’r to the said B. in tail Afterwards he made a Feoffment & the Neice entered for the Forfeiture In this Case the Neice having only an Estate for Life granted to her out of w’ch the Uses sho’d arise the Rem’r to her in-tail could never take Effect if this Deed was construed to enure by Way of Transmutation of Possession Because an Use cannot be larger than the Estate out of w’ch it rises It was therefore adj’d to operate as a Cov’t to stand seised because it could not take Effect any other Way to give B. her Rem’r in tail
N. B. this Case was adj'd ag’t the Grantor himself 2 W. & M. ) Lade a Barker 2 Vent. 260. 3 Lev. 291. 4 Mod. 149.
[301] A Father in Cons, of natural Affection & 5£. gave & granted a Rent charge to his Son The Deed was not inrolled here nor any Attorum’t for Want of w’ch it was obj. it could not take Effect as a Grant w’ch was allowed but adj’d it sho’d enure as a Cov’t to stand seised there being a Cons, of Affection
*B325 5 W.& M.) Osman & Sheaf 3. Lev. 370. 2 Lut. 1205. A Deed was made in these Words “ Know ye that I Mary Waller for the “ Affection I bear to my Cousin Sir W’m Brodman do give & “ grant to him & his Heirs my Rent of lá£. p ann. to hold to him “ & his Heirs from & after my Decease if I die with’t a Son of “ my Body living at my Decease” The Question was whether any Estate passed to Brodman The Obj. was that the Deed was intended to operate as a Grant by the Words give & grant And then there was a Freehold to commence in futuro And so the Grant void But adj’d it sho’d operate as a Cov’t to stand seised as it could take Effect no other Way rather than the Deed sho’d be void. I submit if this be not a Case in Point
9 W. 3.) Sleigh & Metham Nel. Lut. 242. J. C. in Cons, of Marr. & a Portion to be paid did cov’t grant & agree (not saying with or to w'hom) All that Mess. &c. to the Use of himself for Life Then to his Wife for Life for her Jointure with Rem’r over It was obj. this Deed was senseless there being no pson named with whom it was covenanted that Words must be added to make the Sense perfect w’ch was never allowed But adj’d the Deed sho’d operate as a Cov’t to stand seised and that the Court would supply Words to make the Deed sensible viz (to be) And then he covenanted the Land to be to the Use &c. And this to support the Intent of the Parties & that the Deed might not be defeated
From these Cases it appears that the Judges will always construe a Deed to operate that Way w’ch will most effectually ans’r the Intent of the Parties That no precise Form of Words is necessary to make a Deed operate this Way or that That even where there is a seeming appearance upon the Face of the Deed that the P.ties intended a Com. Law Conv. Yet to support the princ. Intent of the Parties viz. the passing the Estate they will construe it a Conv. to Use In short that they will even supply Words where they are wanting rather than a Deed shall be void or have no Effect
Now in the Case before us the Argum’t is much stronger that the Deed sho’d operate as a Cov’t to stand seised than any of the Cases cited for besides that the Deed must be utterly void & have no Operation at all if it be not so construed The Cons, viz. Affection is purely applicable to such a Conv. & no other There is no Cov’t Warranty or other Circumstance upon the Face of the Deed to shew it was intended a Com. Law Conv. *B326 So that it may be fairly inferred to be the Intent of the Parties that it sho’d operate as a Cov’t to stand seised And [302] then as the Intent is evident as to passing the Estate what good Reason can be given why Constr. should not be made to serve that Intent rather than the Deed be void Ut res magis valeat quam pereat. Vid. Mace. R. 46.
Thus having shewn that this Deed by all the Rules of Constr. w’ch have prevailed for more than a Century past ought to be constr as a Cov’t to stand seised
The 2. Point to be proved is that taking it as such the Estate limited to Geo. Smith after the Death of the Grantor is good by Way of Future Use
This I hope is in a great Measure evident from the Cases 'that have been cited I will however beg Leave to examine the Thing to the Bottom And I will begin with considering the Nature of Uses
Before the 27. H. 8. Uses were nothing more than secret Trusts & subject only to the Cognizance & Jurisdiction of a Court of Equity For if a Man conv. Land to others to the Use of himself The Estate of the Land was in the Feoffees And the Cestui que trust had only a Right in Equity to take the Profits And if the Feoffees refused to suffer him His only Remedy was to compel them in Chañe. 1 Rep. 134. b. 8 Mod. 186.
It is sayed the princ. Inventors of Uses were Fear & Fraud Fear in the Times of Civil Wars particularly those betw. the Houses of York & Lancaster to skreen the Estates from Forfeiture Fraud to cheat the Lord of Wardships Escheats &c. And to hinder Ten’ts to Precipes from being known Far. 71. 1 Rep. 123.
These Mischiefs being great were fit to be remedyed For w’ch the 27. H. 8. was made. This Stat. unites the Possession to the Use So that now whoever has the Use has also the Possion & the Estate in the Land But still these Uses preserve so much of their ancient nature as to be constr. according to Equity & Conscience & not according to the strict Rules of the Com. Law as is evident from the Cases that have been cited Where a Deed declares the Intent & only wants some Words Or declares it so as that it suits not with the Rules of Law in other Conv. Yet if the Intent be plain such as Equity before the Stat. would have decreed The Stat. has done as much & executed the Possion to the Use Poll. 527.
*B327 Now I believe it will not be disputed but that if a Feoffment had been made bef. the Stat. to the Use of a third Person after the Death of the Feoffor Equity would have compelled the Feoffee to suffer such third Pson to take the Profits after the Death of the Feoffor And if so the Stat. had done the same in our Case as Equity would have done before it was made
It is a Rule in all Conv. to Use that so much of the Use as is not disposed of is in the Owner of the Land 1 Inst. 22. b. As if a [303] Feoffm’t be made to the Use of a Mans Will or to the Use of another 20 Years hence or after the Death of the Feoffor In all these Cases the Use is in the Feoffor by Result or Impl. till the future Use comes in Esse So in Cov’ts to stand seised as there is no Transmutation of Possession but the Estate in the Land out of which the Uses are to arise is in the Covenantor Where any future Use is limited the Use remains in the Covenantor till the future Use comes in Esse Vid. 6 Rep. 18. Poll. 58. 65, 66. 1 Vent. 374.
Woodlet & Drury 2 Ro. Abr. 791. A Man made a Feoffment & declared the Uses to be after Marr. betw. him & A. to himself & the s’d A. & their Heirs Adj’d that a good Estate for Life was raised to A. after Marr. And that the Feoffor had the Use till the Contingency happened
Lord Pagets Case cited in Rector of Chedingtons Case 1 Rep. 154. Lord Paget covenanted to stand seised to the Use of a Stranger for the Life of him the Covenantor And after his Decease to the Use of two others for 24 Years And after the Exp. of that Term to the Use of the Son of the Covenantor in tail It was adj. that the Uses to the Stranger & for the Term were void for want of a proper Cons. And so the same as if no Use had been limited but that the Use to the Son was well raised And that by Operation of Law Lord Paget had an Estate for Life the Use rem’g in him till his Death At w’ch time the Use to the Son was to commence.
Pibus & Mitford 1 Vent. 372. A man cov’ted to stand seised to the Use of the He rs of his Body by a 2d Wife Adj. that he had an Estate for Life rem’g in him the same not being disposed of (And so he was Ten’t in tail)
These Cases shew that in Conv. to Use so much of the Use as is not desposed of is in the Covenantor as has been mentioned Now in the Case bef. us the Est’a limited to Geo. Smith not being to commence till after the Decease of his Mother the *B328 Covenantor The Use in the meantime remained in her viz. during her Life From whence it is clear the Freehold by this Deed was never put in Abeiance There was always a Tenant to the Precipe So that the Grounds & Reason of the Maxim that a Freehold shall not commence in futuro fail in this Case And consequently the Maxim can’t affect us acc’d to the Rule Cessanie ratione legis cessat ipsa lex.
But the Cases of Coltman & Senhouse & Osman & Sheaf before remembered are fuller to our Case than those last cited The first is “ If he sho’d happen to die with’t Issue Then he did “ give grant & conf. to his Mother ” Here the Estate was to commence after the Death of the Covenantor with’t Issue The other is an express Grant “ To have & to hold after the Death of the Grantor Yet both these Lim. were held good by Way of Use And to serve the Intent of the [304] P.ties the Deeds were constr. to operate as Cov’ts to stand seised Notwithst. the Words made Use of were Words of Conv. at Com. Law And tho’ by the whole Form & Structure of the Deeds they were as unlike such a Conv. as ours can possibly be sayed to be
This Point is not altogether new in this Co’rt It came in queon in the Case of Lawson & Connor adj’d here in Oct. 1731. w’ch as to this Point was shortly thus. “ Antho. Lawson seised “ of 850 A. & 100 A. by Deed gave & granted one Moiety to one “ Fulcher during his Life & after his Death to revert to him the “ Donor And after his Decease he gave one half of the 850 a. to his Son Tho. his Heirs & Ass. To be possed immediately after “ his Decease & the other half & the 100 a. he gave to his Son “ Antho. in the same Manner. One Question was Wheth’r any Est’a passed to Antho. And adj. there did arise a good Estate to him by Way of Use The Deed being constr. too perate as a Cov’t to stand seised And so no Want of a particular Estate to support the future Use the Est. rem. in the Covenantor till the Estate to the Son commenced. Hopk. Mss. A. penes me [sic] 25, 37. And a Mem. that Mr. Rand, who was of the other Side agr’d the Judg’t was right
This Case I take to be much stronger than ours for here the Deed as to the Est. granted to Fulcher could not operate as a Cov’t to stand seised but with Respect to him it must operate as a Conv. at Com. Law And yet because the Estates to the Sons could not be supported or have Effect but by such a Constr. To serve the Intent of the Party w’ch was apparent to pass such *B329 Estates to the Sons And because the Deed might not be defeated It was constr. to enure as a Cov’t to stand seised. W’ch Resolution is consistent with the Cases that have been cited And I make no Doubt but the like Constr. will be made upon our Deed
Obj. Pitfield & Pierce 2 Ro. Ab. 789. Mar. 50. (15 Car.) A Man gives & grants to his Son after his Decease To hold to him & the Heirs of his Body Rem’r over. There was a Proviso that the Son sho’d pay to the Fa’r 8^j. fr Ann during Life the Lords Rents & all other Duties. Adj. no Est. passed to the Son by this Deed For they would not construe it to operate as a Cov’t to stand seised because they sayed it did not appear that the Grantor intended to make himself only Ten’t for Life being granted [sic] after his Decease before the Habendum And that the Intent was to convey at Com Law These are the Reasons in Rolle
A. This is the Case commonly relied on in Questions of this sort but has never had any great Weight It is contrary to Tebb & Popplewell w’ch was before it in Point of Time And the Authority of it is quite pared away by 50 different Resolutions since
Besides accord, to Hale 1 Vent. 141. the principal Reason of the [305] Judgment was the absurd Contrivance of the Deed reserving an Est. for Life to the Father & yet providing for Paim’t of Rent to him by the Son And the Judges would not help out a Deed so contradictory & repugnapt in itself. In Poll. 529. It is sayed the Case was not adj. on much Debate And that Croke & Jones both Reporters of that Time & Judges of the Court take no Notice of it To w'ch may be added that acc’o to Rolle the Judgm’t turned upon the Intent of the P.ty not in the Subject but in. the Shadow viz. the Manner of passing w’ch has been since quite exploded Many Judgm’ts having been given ag’t the seeming Intent of the Pties as to the manner of passing the Estate rather Than the Deed sho’d be defeated As is evident from Crossing & Scudamore & other Cases cited above.
Obj. Osborn & Bradshaw Cro. Jac. 117. Father in Cons, of Love bargained sold gave granted & conf. to the Son & his Heirs The Deed was inrolled Held the Land sho’d not pass unless Money had been paid
Ans. A1 that can be collected from this Case is that it was held the Deed was not good as a Barg. & Sale because noMony was p’d It does not app’r that it was adj. it could not operate as a Cov’t to stand seised nor was there Occasion to argue that *B330 Point because it app’rs in the Case the Deed operated by Way of Confirmation The Son being in possion And so the Deed had its Effect.
Obj. Foster & Foster 1 Lev. 32. Ans. This can be nothing to the Case at bar. The Deed there was adj. to raise no Use because it was a meer Agreem’t of something future to be done It rested only in Cov’t & was not an actual Cov’t
The same Ans’r to Sir Thos. Seymours Case Wi. 61. Hule & Cockerill 3 Lev. 156. both Cov’ts to levy Fines to certain Uses & no Fines levied & Mo. 112. pi. 267. Cov’t that his Land sho’d descend remain & come to his Daughter In all w’ch Cases It was held no Use did arise for the same Reason viz. that the Matter rested in Cov’t only And the Deeds were not intended actual Conv.
Hore & Dix 1 Sid. 82. -is as little to this Case No Use did arise there because the Deed was to Strangers in Cons, of Love to the Son And the Use to the Son could not be supported upon the Use lim to the Strangers It being a Rule that an Use cannot be raised upon an Use
Obj. Samon & Jones 2 Vent. 318. A Man in Cons, of Affection to his Wife Son & Dau’r gave granted & conf. to the Son To hold to him & his Heirs To the Use of Grantor for Life Rem to the Wife for Life Rem to the Son in tail Rem to the Dau’r Deed was not executed by Livery or Inrollm’t So the q. was whether it sho’d operate as a Cov’t to stand seised or be void Adj. it sho’d not opernate as such Because the Intent was apparent to transfer the Est. to the Son & that the Uses should arise out of his Est. So that it must have offered a manifest Violence to that Intent to constr. it a. Cov’t to stand seised In w’ch Cases the Uses arise out of the Est. of the Covenantor '
[306] Ans. It was this plain Intent that the Deed sho’d take Effect by Transmutation of Possion that was the sole Reason of that Judgm’t But unless some such Intent is pointed out in this Case the Resolution will not help but rather be for us Because there is an express Deck of a contr. Intent in our Deed viz. that the Covenantor sho’d have the Estate during her Life From whence it is plain she did not intend to change the Possion or as we say that the Deed sho’d take Effect by Transmutation but rather in the Manner we contend for by Way of Cov’t to stand seised
Davis & Speed 2 Sal. 675. 4 Mod. 153. Show. P. C. 104. Husb’d & Wife levy a Fine of Wifes Lands to the Use of the *B331 Heirs of the Body of the Husb. by the Wife Rem to Husb. in Fee Husb. Wife & Issue all died Q. was whether Heir of Husb. or Wife sho’d have the Land Adj. for Heir of Wife And that Rem to Husb. in Fee was void For taking it as a Rem’r at Com. Law there was no particular Est. to support it. None was expr. & if any was to be impl’d it ought to be in the Wife being her Inheritance And then she dying before the Issue the particular Est. determined before the Rem’r vested And taking it as a springing executory Use it was void because after dying with’t Issue w’ch the Law will not expect This acc’o to Salk, but Show, as to the last Point is that the Intent was to raise an Est ex prcesenti And therefore it ought to be constr executory or contingent w’ch I take to be the better Reason for I apprehend an Use may be limited after a dying with’t Issue. Vid Coltman & Senhouse ante Sed 9.
for Deft. Lightfoot Byrd Commissary & the Governor
Ans. This being by Fine & so a Conv. at Com. Law can be nothing to the present question.
Oct. 1739. Judgm’t for Pit. by the Opin. of
Randolph
Custis
Grymes
Carter
Robinson
Diggs